Argued October 26, reversed and remanded December 23, 1970,
petition for review denied February 9, 1971

## PORT OF NEWPORT, *Respondent, v.*
## HAYDON, *Appellant.*
478 P2d 445

*Benton C. Flaxel*, North Bend, argued the cause for appellant. With him on the brief were Flaxel, Todd & Flaxel and Roger B. Todd, North Bend.

*William T. Hollen*, Newport, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

This is a condemnation proceeding brought by the Port of Newport to acquire real property from the defendant Marguerite Haydon. She was the owner of a small parcel of real property situated on the north shore of Yaquina Bay lying above the mean high water line of that bay. The purpose of the trial was to determine the amount and value of the land. The jury returned a verdict awarding defendant $3,000 as just compensation for the taking of her land. Subsequently, the trial court allowed plaintiff's motion for a judgment notwithstanding the verdict, denied defendant's motion for a new trial, and entered judg-

ment against plaintiff for $1,500. It is from this judgment notwithstanding the verdict that defendant appeals.

The controlling issue of the trial was the location of the mean high water line of Yaquina Bay, the southern boundary of the property. The trial court ruled that the jury's consideration of the evidence of the size and boundaries of the property should be limited to that presented by one witness, the Lincoln County surveyor, and that testimony as to the value of the property would be limited to the piece of land described by that witness from a survey he made. The defendant cites this ruling as her principal assignment of error. The defendant also challenges the court's instruction that the testimony of the surveyor

"* * * is competent testimony introduced in this case as to the correct location of the property boundaries, and you may consider this testimony in your consideration of value."

The trial court in effect decided that the testimony of the Lincoln County surveyor was conclusive evidence of the location of the mean high water line which formed the southern boundary of defendant's property, and of the size of that property. Such a ruling, though contrary to the basic rules that issues of fact and the effect or value of evidence related thereto are within the sole province of the jury (ORS 17.240, 17.250), is proper under certain circumstances. The test to be applied in determining the propriety of such a decision is set out in *Rickard v. Ellis*, 230 Or 46, 368 P2d 396 (1962):

" ' "* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a

character is for the jury. * * * [Citing cases]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, *not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind,* then a question has been presented for the court to decide and not the jury. * * * [Citing cases]." ' " (Emphasis supplied.) 230 Or at 51.

Applying the test to the evidence in this case we must conclude that the trial court exceeded its authority.

Bud Burdett, the Lincoln County Surveyor, was called as a witness for both parties. During the course of his testimony he identified two exhibits: one a copy of a map of a 1912 survey which purports to be the official survey of the mean high water line of Yaquina Bay; the other a map of the Port of Newport as surveyed by the witness in 1967 and 1969. The county surveyor testified that the 1912 survey map indicates on its face that there is approximately 40 feet of land along the eastern boundary of the property in issue above the mean high water line. He subsequently testified that his own survey showed that there was only slightly more than 21 feet of upland at that location. Mr. Burdett gave additional testimony, the purpose of which was to explain this apparent discrepancy and to support the results of his survey. It was that portion of Burdett's testimony concerning his own survey which the court concluded was conclusive evidence of property boundaries and size.

Mrs. Haydon, the defendant-owner, testified that prior to the beginning of port improvements in the vicinity of her property there was 40 to 50 feet of

land above the mean high water line. Her son gave somewhat similar testimony.

During the course of Mrs. Haydon's testimony six aerial photographs of her property and the surrounding area were marked and identified as exhibits. Drawn on these photos were red lines allegedly depicting the exact location of the property. Subsequently Walton Haydon, the husband of the owner and himself a retired hydrographic surveyor, described the method he used in plotting these lines upon the photos. All six exhibits were admitted into evidence.

■■■ Property boundaries and dimensions may be proved by every type of evidence generally admissible to establish any fact. *McDowell v. Carothers*, 75 Or 126, 146 P 800 (1915). In *Brown v. Dorfman*, 251 Or 522, 446 P2d 672 (1968), the Supreme Court specifically acknowledged that a landowner may testify to the location of her boundaries without the aid of a survey. The court stated further that any challenge to such testimony should be directed to the weight to be given it, not to its competence. Even assuming that the Lincoln County surveyor's testimony was the most significant evidence in this case as to property size and boundaries, it was not the only evidence. The accuracy of the results of Mr. Burdett's survey is a question of fact for the jury. *Gallagher v. Kelliher*, 58 Or 557, 114 P 943 (1911); *Seabrook v. Coos Bay Ice Co.*, 49 Or 237, 89 P 417 (1907). We conclude therefore that the testimony of the Lincoln County surveyor with respect to the survey he conducted, in light of the other evidence presented, was not uncontradicted in any way "by witnesses or circumstances" nor so clear and convincing that "disbelief * * * could not reasonably arise in the rational process of an ordi-

nary intelligent mind." All the evidence should have gone to the jury and defendant should not have been limited in her value testimony to the piece of land described by Mr. Burdett's survey.

 One other assignment of error deserves mention to prevent a dispute upon retrial. The plaintiff apparently caused stakes to be placed along what it alleged to be the boundary lines of the property. Defendant contends that it was error for the court to permit these stakes to remain in place during a jury view of the property.

The defendant is correct in stating that a jury view is not evidence but rather a tool for the jury to use in gaining a better understanding of the issues involved and the evidence actually adduced during the trial. The court so cautioned the jurors prior to their viewing the property. In order for the view to be of any assistance the plot of land in issue had to be located, at least generally, and pointed out to the jurors. The stakes served that purpose. There was no error in the view.

Reversed and remanded for a new trial.