920 F.2d 589
 1990-2 Trade Cases 69,262
 Richard W. TRAWEEK, an individual; Traweek Investment
Company, Inc., a California corporation; Traweek
Investment Fund Number 10, Ltd., a
California Limited
Partnership,
Plaintiffs-
Appellants,
v.
CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation;
Evans-Pacific Realty, Inc., a California
corporation; Morris Bernstein, an
individual, Defendants-Appellees.
 No. 88-15465.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1989.
Decided Dec. 6, 1990.
 
 John I. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs-appellants.
 Jerome B. Falk, Jr., Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before CHAMBERS, POOLE and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Richard Traweek and Traweek Investment Fund No. 10 appeal the dismissal on the merits of their constitutional claims and a grant of summary judgment as to their antitrust claims against the appellee City and County of San Francisco. We have jurisdiction over appellants' timely appeal pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 In June 1980, Richard Traweek and Traweek Investment Fund No. 10, Ltd. purchased the John Muir apartment complex and took steps to convert that property into condominiums. Their application, pursuant to Municipal Ordinance No. 337-79 (1979), placed them on the "1983 Priority List" and would have allowed them to convert 187 units into condominiums by 1983. However, in December 1982, appellee passed an ordinance which took effect in January 1983 prohibiting condominium conversions by any applicant whose property contains more than 25 units. Municipal Ordinance No. 598-82 (1982) (hereinafter "the 1983 Ordinance"). The 1983 Ordinance effectively prohibited appellants from converting their property into condominiums.
 
 
 3
 Appellants sued the City and County of San Francisco, the Mayor of San Francisco, and other named individual state officials for conspiracy to violate antitrust laws and for deprivation of federal constitutional rights guaranteed by the takings clause and the due process and equal protection clauses. Traweek v. City and County of San Francisco, 659 F.Supp. 1012, 1017 (N.D.Cal.1984). Appellants alleged that the City responded to private citizens by designing and passing the 1983 Ordinance specifically to block appellants' conversion of apartments into condominiums. In its published opinion, the district court granted the City's motion to dismiss on the merits for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) as to the constitutional claims, id. at 1022, but denied the motion to dismiss as to the antitrust claims. Id. at 1019. The district court also granted the named individual defendants absolute legislative immunity. Appellants contest the dismissal of their constitutional claims against the City but do not contest the dismissal of the individual defendants. On December 31, 1985, the district court granted appellees' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) on the ground that state action immunity barred appellants' antitrust claims. Appellants appeal this decision as well.
 
 II. DISCUSSION
 A. STANDARD OF REVIEW
 
 4
 We review de novo both the grant of summary judgment pursuant to Fed.R.Civ.P. 56(b) and a dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989). In a motion for summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). In a motion to dismiss, we must determine whether it appears beyond doubt that appellants could prove no set of facts entitling them to relief. Love v. United States, 871 F.2d 1488, 1491 (9th Cir.1989) (dismissal for failure to state a claim).
 
 B. STATE ACTION IMMUNITY
 
 5
 As a general rule, the anticompetitive actions of a state are immune from the reach of antitrust laws. Parker v. Brown, 317 U.S. 341, 350-52, 63 S.Ct. 307, 313-14, 87 L.Ed. 315 (1943). In creating this immunity, the Supreme Court recognized that the free market principles espoused in the Sherman Antitrust Act end where countervailing principles of federalism and respect for state sovereignty begin. Id. at 350-51, 63 S.Ct. at 313. The Court has explicitly extended state action protection to the conduct of municipalities. See Community Communications Co. v. City of Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). In order to obtain immunity, a municipality must demonstrate that the state policy authorizing the challenged action has been clearly articulated. Boone v. Redevelopment Agency of the City of San Jose, 841 F.2d 886, 890 (9th Cir.), cert. denied, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); Kern-Tulare Water Dist. v. City of Bakersfield, 828 F.2d 514, 518 (9th Cir.1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). We have adopted a two-part test to determine whether a "clearly articulated" state policy has authorized a municipality's anticompetitive actions. Boone, 841 F.2d at 890.[1] First, a court must determine whether the legislature authorized the challenged actions of the city. Second, the court must determine whether the legislature intended to displace competition with regulation. Id.
 
 
 6
 Because appellants do not contend that the City lacked authority to regulate or even to prohibit condominium conversion in this instance,[2] we need only to determine whether the legislature intended to displace competition with regulation. A state is deemed to have intended to displace competition with regulation if the statutes pursuant to which a city has acted clearly contemplates that it may engage in anticompetitive conduct. Kern-Tulare, 828 F.2d at 520; Grason Elec. Co. v. Sacramento Mun. Util. Dist., 770 F.2d 833, 836 (9th Cir.1985), cert. denied, 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986). Appellants raise two arguments in support of their contention that the legislature did not intend the City's anticompetitive conduct.
 
 1. MALICE
 
 7
 Appellants contend that although this court's decisions bar consideration of a state's malicious motive after the state action doctrine has been found to apply, a reviewing court may consider bad faith motivation in determining whether or not the legislature intended the City's conduct. They argue that because the legislature could not possibly have intended the City's alleged intentionally anticompetitive conduct, state action immunity does not protect the City's conduct.
 
 
 8
 We reject appellants' argument. In Llewellyn v. Crothers, 765 F.2d 769 (9th Cir.1985), we stated that:
 
 
 9
 the availability of [state action] immunity, however, does not depend on the subjective motivations of the individual actors, but rather on the satisfaction of the objective standards set forth in Parker and authorities which interpret it.
 
 
 10
 Id. at 774. Thus, although the district court in Llewellyn recognized the possibility that the state officer disliked and sought to get rid of chiropractors, id, the court did not rely upon or even consider the plaintiff's complaint of bad faith. Once the Llewellyn court answered the question of whether the state officer acted pursuant to an "express state policy and [his actions] were of a kind contemplated by the statutory scheme ...," id., the analysis ended and immunity attached. Llewellyn governs the instant case. Indeed, the facts relevant to consideration of bad faith motivation in Llewellyn are indistinguishable from the facts of the instant case. Even if appellants could prove bad faith on the part of the City, following Llewellyn, we do not consider this evidence because subjective motivation plays no part at any point in determining whether state action immunity protects the conduct of municipalities.
 
 
 11
 This is as it should be. Appellants argue in effect that, absent a statutory mandate to act maliciously, evidence of malice on the part of the City in enacting anticompetitive measures prevents the reviewing court from finding that the state intended the anticompetitive measures. Presumably, state action immunity would continue to attach in cases where the state explicitly allowed for malicious enactment of ordinances by the City. But what legislature would enact such a statute? Once a reviewing court starts to consider subjective motivation at all, the principle in Llewellyn collapses.
 
 
 12
 Furthermore, the policy underlying the state action doctrine mandates our holding. As the Llewellyn court stated, allowing courts to consider subjective motivation would: "compel the federal courts to intrude upon internal state affairs whenever a plaintiff could present colorable allegations of bad faith...." Id. Permitting a reviewing court to consider bad faith motivation in determining whether the legislature intended the City's conduct would require such disfavored inquiry. The attempt to draw a distinction between malicious attempts to cause anticompetitive results, and actions taken with neutral intent that necessarily have anticompetitive results may have some intuitive appeal. However, we cannot square this distinction with the important principle underlying Llewellyn.
 
 
 13
 2. THE ORDINANCE RESULTING IN ANTICOMPETITIVE CONDUCT VIOLATES CALIFORNIA LAW
 
 
 14
 Appellants next argue that the legislature could not have intended the City's allegedly anticompetitive conduct because: 1) that intent cannot be inferred from the general grant of power to zone housing subdivisions; and 2) the City's actions violated California law.
 
 
 15
 We reject appellants' invitation to look behind California's general grant of zoning power to municipalities. The Supreme Court has made clear that an in-depth substantive review of a statute to determine the legislature's intent is not appropriate. See Hallie v. City of Eau Claire, 471 U.S. 34, 41-43, 105 S.Ct. 1713, 1717-19, 85 L.Ed.2d 24 (1985).
 
 
 16
 The legislature is deemed to have intended anticompetitive conduct as long as it may foreseeably result from a broad authority to regulate. Id. at 42-43, 105 S.Ct. at 1718-19 (finding legislative intent from state's specific authorization to cities to provide sewage services and its delegation to cities of express authority to take action which could foreseeably result in anticompetitive conduct); see also Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 64-65, 105 S.Ct. 1721, 1730-31, 85 L.Ed.2d 36 (finding that state's failure to describe the implementation of its policy in detail will not defeat protection of the state action doctrine if legislature's intent to establish an anticompetitive regulatory program is clear). Under this non-substantive review of the statutory scheme, the only instance in which the Court will apparently deny a finding of legislative intent to sanction the alleged anticompetitive conduct is where the state has given the municipality an exceedingly broad and unspecific grant of power. See, e.g., Boulder, 455 U.S. at 54-56, 102 S.Ct. at 842-43 (holding that a grant of home rule authority to the city was not specific enough to warrant state action immunity). The Court's rejection of substantive review of state statutes is wholly consistent with the policies of federalism and state sovereignty upon which the state action doctrine is based. Once the state decides to delegate its regulatory authority to a city, that city enjoys the same immunity from federal antitrust law that the state would have enjoyed.
 
 
 17
 The relevant portions of the California Government Code Sec. 65300 et seq. (West 1983) delegate to the City the power to adopt a comprehensive, long-term general plan for the physical development of the county or city, including waste disposal, conservation, analysis of housing needs and regulation of the housing market. We find that this statute clearly delegates sufficient regulatory authority to the City to uphold state action immunity. The legality of the 1983 Ordinance under California case law is irrelevant for the purposes of this case. The relevant question is whether the state intended the authorizing statute to have anticompetitive effects. Thus, what the city does to implement that statute, rightly or wrongly, reveals nothing about the state's intent.
 
 
 18
 For the reasons stated above, we hold that appellee has immunity from appellant's antitrust claims.
 
 C. APPELLANTS' CONSTITUTIONAL CLAIMS
 
 19
 The issue of ripeness in the takings context is jurisdictional, Austin v. City and County of Honolulu, 840 F.2d 678, 680 n. 2 (9th Cir.), cert. denied, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988), and thus may be raised at any stage in the proceedings. Bedoni v. Navajo-Hopi Indian Relocation Comm'n, 854 F.2d 321, 325 (9th Cir.1988). We subject ripeness issues to de novo review. See Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453 n. 4 (9th Cir.1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). The ripeness requirement is similarly applicable to appellants' claims for denials of substantive due process, equal protection, and procedural due process. Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989).
 
 
 20
 Before appellants' claims are ripe for consideration, the government entity charged with implementing the regulations must first reach a final decision regarding the application of the regulations to the property at issue. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). A "final decision" requires at least: 1) a rejected development plan and 2) a denial of a variance. Herrington v. Sonoma County, 857 F.2d 567, 579 (9th Cir.1988). A landowner can avoid the final decision requirement if attempts to comply with the requirement would be futile. Generally, before the futility exception applies, the complainant must submit at least one application for a variance. See Kinzli, 818 F.2d at 1454-55. Appellants have not applied for a variance. Although appellants need not apply for a variance if such application does not constitute a legally viable option, see, e.g., Herrington, 857 F.2d at 569-70, appellants have not indicated any facts which satisfy their heavy burden of establishing the futility exception. See American Sav. & Loan Ass'n v. County of Marin, 653 F.2d 364, 371 (9th Cir.1981). Therefore, we hold that appellants' claims do not satisfy the ripeness requirement. We vacate the district court's dismissal of appellants' constitutional claims on the merits with directions to dismiss for lack of jurisdiction.
 
 III. CONCLUSION
 
 21
 We affirm the district court's summary judgment as to appellants' antitrust claims on the ground that the state action doctrine immunizes the City against antitrust liability.
 
 
 22
 We vacate the district court's dismissal on the merits of appellants' takings, substantive due process, equal protection and procedural due process claims because they were not ripe for consideration. We direct the district court to dismiss these constitutional claims for lack of jurisdiction.
 
 
 
 [1]
 The decisions of this court concerning the clear articulation requirement have, in some instances, lacked clarity. Although we have repeatedly reiterated the need for a "two step test," different decisions have posited two different "steps." Compare Boone, 841 F.2d at 890 (two step test requires proof that the legislature: 1) authorized the challenged actions and 2) intended to displace competition with regulation), with Golden State Transit Corp. v. City of Los Angeles, 726 F.2d 1430, 1433 (9th Cir.1984) (two step test requires: 1) proof of an existence of a state policy to displace competition with regulation and 2) proof that the legislature contemplated the kind of actions alleged to be anticompetitive), rev'd on other grounds, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986). Some cases have asked only one question in determining whether or not state action immunity attaches. See, e.g., Patrick v. Burget, 800 F.2d 1498, 1505 (9th Cir.1986) rev'd on other grounds 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988) (plaintiffs must show that "the legislature contemplated the kind of activity complained of. That is, it must be clear that the legislature intended to replace competition with regulation." (citations omitted)). See also Mercy-Peninsula Ambulance v. San Mateo County, 791 F.2d 755, 757 (9th Cir.1986); Kern-Tulare, 828 F.2d at 520
 We follow the two step test set forth in Boone. Analytically all the tests are similar and address the same concerns. However, the Boone division between consideration of "authorization" and "intent" adroitly separates the threshold issue of whether or not the City is acting pursuant to any authority at all.
 
 
 [2]
 Appellants do contend that the statutes involved do not contemplate "price regulation, much less stabilization at the behest of private competitors." However, it is safe to assume that no statute would explicitly authorize such conduct, and appellants' contention that the state did not authorize malicious conduct on the part of the City will be considered under the subject of intent, the second prong of the test